493 A.2d 1110

**ALLSTATE INSURANCE COMPANY**

**v.**

**Frances SPARKS, et al.**

**No. 1558, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 14, 1985.

Paul Ethridge, Rockville (Charles E. Wilson, Jr., and McCarthy, Wilson & Ethridge, Rockville, on the brief), for appellant.

Arthur H. Blitz, Bethesda (Goldstein, Blitz & Rosenberg, P.A., Bethesda, on the brief), for appellee, Paul J. Green.

James H. Clapp of Frederick, for appellee, Pennsylvania Millers Mut. Ins. Co.

Argued before WEANT, ROSALYN B. BELL and KARWACKI, JJ.

WEANT, Judge.

The controversy in this appeal is whether two insurance policies issued by appellant Allstate Insurance Company (Allstate) provide coverage for certain fire losses. In particular, we must address policy language which excludes coverage for "intended damages." This language has not previously been interpreted by the appellate courts of Maryland.

The parties agree that the losses occurred in the following manner. On the night of 4 October 1981, Frances Sparks, who held a homeowner's policy and an automobile policy issued by Allstate, permitted her son James to use her car. That night James, with two friends, Greg Bostion and John Schroyer, drove to the premises of Farmers Supply Co., Inc. (Farmers Supply). The youths went to a Farmers Supply feed truck that was parked in or near a mill building, intending to siphon gas from that vehicle into a container. After they began this operation, James, with an extraordinary lack of good judgment, chose to provide illumination with a cigarette lighter. Gas fumes in the area of the truck ignited. Not surprisingly, the resultant fire destroyed the Farmers Supply mill and substantially all of its contents. Amazingly, the boys were not harmed. The parties concur that the boys intended to steal gas but did not intend to burn Farmers Supply's property.

To settle the question of whether it might be liable under the automobile and homeowner's policies, Allstate brought an action for declaratory judgment in the Circuit Court for Frederick County. Allstate named as defendants Ms. Sparks, her son James, Bostion and Schroyer. Other defendants were Farmers Supply, Paul J. Green (owner of Farmers Supply), the insurer of Bostion, and the insurer of Schroyer. The circuit court granted a motion to intervene by yet another insurance company, Pennsylvania Millers Mutual Insurance Company, which under a policy issued to Farmers Supply had covered a small part of the loss. The

four insurers each filed cross-motions for summary judgment.

Following a hearing on the motions the circuit court judge issued a memorandum opinion. After concluding that there was no genuine dispute as to any material fact, Md.Rule 2–501(e), the judge indicated that he would grant the motion of Pennsylvania Millers. In so ruling the judge held, in part, that Allstate was obligated to provide coverage. The judge also entered an order reflecting this disposition and further stating that Allstate was obligated under both the automobile and homeowner's policies issued to Ms. Sparks. Allstate now presents the following question for our review:

> [Did] the trial court [err] in ruling that the appellant was obligated to provide insurance coverage to Frances Sparks and James Sparks as a result of the occurrence at issue under both the automobile insurance policy and the homeowner's insurance policy issued to Frances Sparks by Allstate?

Allstate first argues that the fire in this case was an "intentional act" which was excluded under the terms of both policies. The homeowner's policy, under a "Family Liability" clause, provided coverage for "all sums which the Insured shall become legally obligated to pay as damages . . . caused by an occurrence." In the applicable definitions section, the homeowner's policy defines an "Insured" to include members of the "Named Insured's household," and defines an "occurrence" as an "accident . . . which results, during the policy period, in bodily injury or property damage." The policy excludes, however, coverage of "property damage which is either expected or intended from the standpoint of the Insured." Under the automobile policy, coverage includes "destruction of property, arising out of the ownership, maintenance or use, including loading and unloading of the owned automobile," but excludes "property damage caused intentionally by, or at the direction of, the insured." We need address only the specific language of the homeowner's policy, because, as we shall explain

below, the automobile policy contains other language precluding coverage for the fire losses.

Allstate asserts that our interpretation of the exclusion is governed by four decisions of the Court of Appeals, each involving policies covering losses "caused by accident." *See State Farm Mutual Auto Insurance Co. v. Treas*, 254 Md. 615, 255 A.2d 296 (1969); *Glens Falls Insurance Co. v. American Oil Co.*, 254 Md. 120, 254 A.2d 658 (1969); *Harleysville Mutual Casualty Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 235 A.2d 556 (1967); *Haynes v. American Casualty Co.*, 228 Md. 394, 179 A.2d 900 (1962). The trial judge concluded that the language "caused by accident" was sufficiently dissimilar from that contained in the Allstate policies to render the above cases inapposite. We agree that these cases are not controlling.

Of the four decisions, *Treas* and *Harris & Brooks* denied coverage based on the "caused by accident" language. The *Harris & Brooks* court grounded its interpretation in part on the dictionary definition of "accident," and concluded therefrom that the clause excluded intentional acts with results not "unforeseen, unusual and unexpected." 248 Md. at 152, 235 A.2d at 558. Later, the *Treas* court reiterated the standard laid down in *Harris & Brooks*. The construction in these cases was derived from and, in our view, dependent on the use of the exclusionary language "caused by accident."

■ The exclusionary clause in the present case does not contain these words; instead it excepts "damage which is either expected or intended from the standpoint of the Insured." Admittedly, the issue is the same if stated in rough terms: whether the loss was intentional or accidental. The precise approach to be used, however, differs in two important respects. First, there is the question of whether the *results* or the *means* must have been intended. The Allstate policy indicates, in our view, that the insured must have intended the results ("damages"), not simply the causing act, for coverage not to apply. In contrast, "caused

by accident" is ambiguous with regard to this distinction, as the *Haynes* court noted. 228 Md. at 400, 179 A.2d at 904. Second, the Allstate policy provides that the result must be expected or intended "from the standpoint of the Insured," thereby requiring, we believe, a more subjective standard for intent than the test of foreseeability applied in *Harris & Brooks* and *Treas.*

Allstate maintains that the prior decisions should control because the homeowner's policy elsewhere defines an insured "occurrence" as an "accident." This language and the intended damages exclusion are *in pari materia* and should be construed together. We do not believe that the generally-phrased definition of "occurrence" suggests an intent to restrict coverage to a greater degree than under the intended damages exclusion.

■ We find support for our construction of the intended damages clause in treatises and decisions of other states. The circuit court judge cited as authority a Pennsylvania case involving a similar clause applied to facts quite analogous to those at hand. *See Eisenman v. Hornberger*, 438 Pa. 46, 264 A.2d 673 (1970). In concluding that the policy provided coverage for the unintended result of an intended act, the *Eisenman* court stated:

> [T]he vast majority of courts which have considered such provisions have reached the conclusion that before the insurer may validly disclaim liability, it must be shown that the insured intended by his act to produce the damage which did in fact occur.... We subscribe to such a view. There is a very real distinction between intending an act [and] intending a result and the policy exclusion addresses itself quite clearly to the latter.

438 Pa. at 49, 264 A.2d at 674 (citation omitted). This same view is described in somewhat different terms in 7A Appleman, *Insurance Law and Practice,* § 4492.02 (1979).

The rebuttable presumption that a person intends the ordinary consequences of his voluntary act that is used in determining responsibility for the consequences of a vol-

untary act has no application to the interpretation of terms used in insurance contracts. The word "intent" for purposes of tort law and for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his act or believes that consequences are substantially certain to result from it. In order for an act to be intentional, its consequences must be substantially certain to result as opposed to the feature of wanton acts that the consequences be only probably certain to result. . . .

*Id.* at 29 (footnote omitted). In this case, Allstate conceded that the youths never intended or expected to cause a fire. The circuit court judge, therefore, properly concluded that Allstate could be held liable under the homeowner's policy.

■ Allstate also challenges the trial court's conclusion that coverage applied under both the automobile and the homeowner's policies. Appellees Green and Pennsylvania Millers agree that the judge erred, in light of language in the policies which render them mutually exclusive. In our view the homeowner's policy applies and the auto policy does not, because the losses did not arise out of the "use" or "loading and unloading" of Ms. Sparks's car. *See De-Jarnette v. Federal Kemper Insurance Co.*, 299 Md. 708, 475 A.2d 454 (1984); *Vanguard Insurance Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972). The fire at the Farmers Supply mill was the result of an "independent cause" unrelated to the use of the Sparks car itself. *See DeJarnette*, 299 Md. at 722 & n. 7, 475 A.2d at 461 & n. 7. We must, therefore, reverse the circuit court judgment to the extent that it provided that Allstate was obligated under the automobile policy.

*SO MUCH OF THE JUDGMENT WHICH PROVIDES COVERAGES UNDER THE ALLSTATE INSURANCE COMPANY AUTOMOBILE POLICY REVERSED. BALANCE AFFIRMED.*

*COSTS TO BE PAID BY APPELLANT.*