526 A.2d 642

**TERRA NOVA INSURANCE COMPANY, LTD.**

v.

**CHILLUM CORPORATION, t/a Chillum Liquors, et al.**

No. 1439, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 10, 1987.

Walter W. Pitsenberger, Bowie, for appellant.

Joseph A. De Paul (Patrice E. Lewis and De Paul and Lewis, P.A., on the brief), College Park, for appellees.

Argued before GILBERT, C.J., and BISHOP and ALPERT, JJ.

GILBERT, Chief Judge.

This appeal is another test of the width, depth, and height of *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975), *rev'g* 23 Md.App. 186, 326 A.2d 758 (1974). In that case, Judge Eldridge, writing for the Court, said:

"The obligation of an insurer to defend its insured under a contract provision ... is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. [Citations omitted]. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim

could be covered by the policy." (Citation omitted) (Emphasis in original).

276 Md. at 407–08, 347 A.2d at 850.

Because of those words, the Circuit Court for Prince George's County (Casula, J.) declared that Terra Nova Insurance Company, Ltd. was "obligated" to defend Chillum Corporation and others in a tort action brought by John Patterson.[1] Believing that the circuit court erred, Terra Nova posits two issues to this Court:

    I. "Was the suit by ... [Chillum's] former employee [John Patterson] covered under ... [Terra Nova's] policy?"

    II. "Did the court err when it ordered ... [Terra Nova] to defend and to indemnify ... [Chillum]?"

Before discussing the application *vel non* of *Brohawn*, we shall first recount the factual setting from which this matter arose.

The record discloses that Chillum Corporation operated a retail liquor store in Hyattsville, Maryland. Chillum had an insurance policy with Terra Nova. The policy provided, in pertinent part:

"I. COVERAGE P—PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparag-

---

1. On oral argument we were informed that the underlying tort action had been settled. We shall, nevertheless, address the issues since there must be a resolution of the dispute between the insurer and its insured. *See Travelers Indemnity Company v. Insurance Company of North America,* 69 Md.App. 664, 519 A.2d 760 (1987).

ing material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

. . . . .

if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Exclusions

This insurance does not apply:

. . . . .

(c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured;

(d) to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the named insured was made prior to the effective date of this insurance;

(e) to personal injury arising out of a publication or utterance described in Group B concerning any organization or business enterprise, or its products or services, made by or at the direction of any insured with knowledge of the falsity thereof."

In the course of operating the business, the principals of Chillum became aware of the fact that the corporation was the victim of employee pilferage. According to Chillum's

answers to Terra Nova's interrogatories, John Patterson was observed committing 112 acts of theft. Additional pilfering was supposedly performed by employees who were under the supervision of Patterson. The thefts allegedly committed by Patterson were videotaped. The county police filed charges against Patterson, but the State's Attorney declined to prosecute. Patterson sued Chillum and its agents, William G. Porterfield and William R. Porterfield. The Patterson suit alleged that he was falsely arrested and defamed. Demand was made on Terra Nova to defend, but they declined to do so. Rather they filed a declaratory judgment action in which they sought to have the circuit court hold that the insurance carrier was not obligated to defend Chillum and its agents against Patterson's suit or to pay any damages that might be awarded to him. Judge Casula, as we have previously stated, found against Terra Nova; and this appeal ensued.

We distill the issues raised on appeal by Terra Nova into one, namely: Is Terra Nova obligated to defend and indemnify, if necessary, the appellees in the Patterson suit?

The thrust of Terra Nova's argument is that Patterson was an employee of Chillum at the time of the alleged peculations by Patterson. Accepting its own theory as dogma, the insurance carrier asserts that because the policy specifically excludes "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment ... by the named insured," there is no responsibility on its part to defend or indemnify Chillum. Terra Nova reasons:

> "It is clear that without the employment relationship ... Patterson would not have been on the premises and would not have had the opportunity for the misconduct which lead to the charges [against him]. The use of the word 'offense' [in the quoted provision of the policy] indicates that it relates to something that is not done in the normal *scope* of the employment. It is something done which could have been within the scope of the employment, but constituted an 'offense' whether it was

done within the scope, or beyond the scope of the employment.

... Patterson was an employee when he was detected in his misconduct."

*Ergo,* says Terra Nova, by the express terms of the policy, there is no coverage; hence, there is no contractual duty to defend.

Judge Casula resolved against the insurance carrier the question of Patterson's acting as an employee at the time of the peculation. The judge found:

"Patterson was an employee of Chillum Corporation when the alleged thefts occur[r]ed. He was hired as a supervisor and cashier. That the alleged misconduct was caused by an employee of the company does not automatically bring that act within the employment relationship. Chillum Corporation's defense of Patterson's suit cannot be deemed to arise out of the scope of employment simply because Patterson was an employee. The Court of Appeals in *East Coast Freight Lines v. Mayor and City Council of Baltimore City,* 190 Md. 256 [58 A.2d 290] (1948), devised a standard for determining when an employee is acting within the scope of his employment. '[T]he conduct must be of the kind the servant is employed to perform, and ... actuated at least in part by a purpose to serve the master.' *Id.* at 285 [58 A.2d at 304]. The alleged theft by Patterson was not authorized by his employers, nor was it the kind of conduct for which he was employed. Patterson was employed as a supervisor and cashier. A supervisor's purpose is to guard against theft not to perpetrate or condone it. Nor can such an act be considered as serving his employer; it is, instead, in direct contravention of his employment duties."

From our review of the record, we are unable to say that Judge Casula's legal conclusions were incorrect or his findings of fact clearly erroneous.

Certainly when an employee steals from his or her employer, at the moment of the theft, the employee abandons the role of employee and becomes that of tort-feasor as

against the employer's property. The fact that the employee may have stolen from the employer during working hours does not mean that the thefts occurred in the scope of employment. Employers normally do not hire employees for the purpose of having the employee steal from the employer. *See Great Atlantic & Pacific Tea Co. v. Noppenberger,* 171 Md. 378, 189 A. 434 (1937).

This Court, in *Rusnack v. Giant Food, Inc.,* 26 Md.App. 250, 262–63, 337 A.2d 445, 452–53, *cert. denied,* 275 Md. 755 (1975), quoted from Restatement (Second) of Agency § 229 (1958), where it is said:

"(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal."

As we read the several criteria established by the Restatement, which were implicitly adopted in *Noppenberger,* 171 Md. at 390–91, 189 A. at 440, as well as *Rusnack,* Patterson's alleged criminal activities did not fit within the scope of his employment.

Whether Patterson did or did not commit the thefts attributed to him by the appellees is a matter for another court to decide at another time.[2]  It is enough for us to note in this appeal that an unauthorized excursion by an employee into theft from his or her employer is a departure from employment.

Patterson was not acting within the ambit of his employment at the time of the alleged thefts.  Hence, the exclusionary provisions of the policy that relate to "personal injury sustained ... directly or indirectly ... [in the course of] employment ..." do not apply.

We think Judge Casula correctly ordered Terra Nova to defend Chillum and the other appellees.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.