545 A.2d 718

**Cheryl J. HARPY, a Minor, etc.**

**v.**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.**

**No. 1666, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Aug. 9, 1988.

James K. Carmody, Annapolis (John A. Blondell, Glen Burnie, on the brief), for appellants.

John R. Greene (Goodman, Cohen & Bennett P.A., on the brief), Annapolis, for appellee.

Argued before GARRITY, ROBERT M. BELL and POLLITT, JJ.

POLLITT, Judge.

Cheryl J. Harpy sued her father, Joseph T. Harpy, Jr., in the Circuit Court for Anne Arundel County for (1) assault and battery, (2) intentional infliction of emotional distress, and (3) negligence. The factual allegations in all three counts were, in essence, that during the years 1979 through 1984, when Cheryl was between 9 and 13 years old, her father sexually abused her in various ways, including sexual intercourse.

During the period covered by the alleged abuse, Nationwide Mutual Fire Insurance Company had issued two poli-

cies of homeowner's insurance to Mr. Harpy. Harpy made demand of Nationwide that it provide a defense in the sexual abuse case based on the aforesaid insurance policies. Nationwide filed a complaint for Declaratory Judgment, seeking a declaration that neither of the policies affords any defense or coverage. Pursuant to Rule 2–501, Nationwide moved for summary judgment. Based on the pleadings, the contracts of insurance and the affidavit of Mr. Harpy, the trial court (Goudy, J.) determined that there were no disputes as to material facts and that Nationwide was entitled to judgment as a matter of law. From the judgment entered on those findings, this appeal ensued.

Appellants present two issues for our consideration, which they state as:

I.  Was it appropriate for the court to decide the Declaratory Judgment action?

II.  Assuming that it was appropriate for the court to decide the Declaratory Judgment action, did the court err in granting summary judgment to Nationwide?

We find no error, and shall affirm the judgment.

### Facts

The undisputed facts of the case include the following. On 14 November 1980, Nationwide issued a policy of insurance to Mr. Harpy, insuring him against loss from damages for "negligent personal acts." It promised to

[d]efend with counsel of its choice any suit against an Insured alleging ... bodily injury, illness ... and seeking damages therefor. Such suit shall be defended even if groundless, false or fraudulent.

and to

pay on behalf of the Insured all sums which he shall become legally obligated to pay (1) as damages because of bodily injury, sickness or disease....

Excluded from the protection afforded by the policy were damages due to

bodily injury, illness, or death or property damage caused intentionally by or at the direction of an Insured....

That policy was replaced on 14 November 1984 by a new policy, which promised to pay "damages the **insured** is legally obligated to pay due to an **occurrence**," and to "provide a defense at our expense by counsel of our choice." That policy excluded coverage for personal liability as to bodily injury or property damage

which is expected or intended by the **insured.**

In his answer to the declaratory judgment action, Mr. Harpy admitted "pleading guilty in the Circuit Court for Anne Arundel County" to charges of sexual child abuse. In his affidavit, filed in response to Nationwide's motion for summary judgment, he swore

that I have never taken any action with regard to my daughter, CHERYL J. HARPY, in which I intended or expected that she would suffer *the type of injuries* that she has alleged in her Complaint against me. [emphasis added]

The injuries alleged in the negligence count of the complaint in the underlying tort action were that Cheryl suffered "extreme and severe emotional distress and mental disorder, requiring necessary treatment by mental health practitioners, in the past, present and in the future."

Further facts will be supplied as necessary.

## I

### Declaratory Judgment Action is Appropriate

--------

### The General Rule

The Maryland Uniform Declaratory Judgments Act, Maryland Code (1984 Repl. Vol.) §§ 3–401 through 3–415 of the Courts and Judicial Proceedings Article, gives the court jurisdiction to construe a written contract and declare the rights of the parties under it. Section 3–406; *Northern Assurance Co. v. EDP Floors,* 311 Md. 217, 533 A.2d 682

(1987). The subtitle is remedial and shall be liberally construed and administered. Section 3–402.

> The court may grant this discretionary relief in order to terminate an actual controversy if "[a] party asserts a legal ... right ... [that] is challenged or denied by an adversary party, who also has or asserts a concrete interest in it." § 3–409(a)(3) of the Courts Article. Thus, when interested parties advance adverse claims upon a state of facts that has accrued, a justiciable controversy exists, and a trial court may enter a declaratory judgment.

311 Md. at 223, 533 A.2d at 685 (citations omitted; bracketed material in original).

The Act has been utilized frequently in the construction and interpretation of insurance contracts. All the requirements of the Act are present in this case. Mr. Harpy is the named insured in policies issued by Nationwide. Those policies require Nationwide to provide both a defense and indemnification as to claims within their coverage. Harpy asserts that at least one of the claims against him by his daughter is covered. Nationwide says it is not, and seeks an interpretation of its rights under the policy.

### The "Brohawn" Exception

■ In what erroneously has been perceived by many as a departure from established law, the Court of Appeals said, in *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975), that there are occasions when a declaratory judgment action is not an appropriate vehicle by which to determine questions of policy coverage. When there is a pending tort action, and the question sought to be resolved will be fully decided in the tort action, declaratory judgment is inappropriate. This is nothing more than a restatement of the rule that courts generally should not entertain declaratory judgment proceedings when another action is pending in which the same issues will be determined. *See A.S. Abell Co. v. Sweeney*, 274 Md. 715, 337 A.2d 77 (1975); *Watson v. Dorsey*, 265 Md. 509, 512 n. 1,

290 A.2d 530, 532 (1972); *Grimm v. Co. Comm'rs of Wash. Co.*, 252 Md. 626, 250 A.2d 866 (1969).

In *Brohawn*, Ms. Brohawn was sued by employees of a nursing home for both assault and negligence. Her insurance policy excluded coverage for "any act committed by or at the direction of the Insured with intent to cause injury or damage to person or property." 276 Md. at 400, 347 A.2d at 846. There was a factual dispute as to whether her physical contact with the plaintiffs was intentional or accidental. That question would be resolved in the underlying tort action. If that trial determined her actions were intentional, there was no insurance coverage; if her actions were determined to be accidental but negligent, there was coverage.

Cases in which this Court, relying on *Brohawn*, has held declaratory judgment inappropriate include *Allstate Ins. Co. v. Atwood*, 71 Md.App. 107, 523 A.2d 1066, *cert. granted*, 310 Md. 274, 528 A.2d 1286 (1987); *Travelers Indem. v. INA*, 69 Md.App. 664, 519 A.2d 760 (1987); and *Ohio Casualty Ins. v. Lee*, 62 Md.App. 176, 488 A.2d 988, *cert. denied*, 303 Md. 471, 494 A.2d 939 (1985).

In *Allstate* the issue of intentional battery as opposed to negligent contact had already been litigated in the underlying tort action, in which the insurer had elected not to participate. We said the question could not be relitigated in the declaratory judgment case. In *Travelers Indemn.* we said the factual determination of an employee status should have been decided in an underlying tort case. In *Ohio Casualty* the trier of fact in the tort case would determine whether Lee was acting as a director, stockholder or employee of the insured, and the resolution of that factual question would determine coverage. In all those cases the issue was not an interpretation of an allegedly ambiguous insurance policy. The issue was a factual dispute which necessarily would be resolved in the tort case.

The holding in *Brohawn* was further explained by the Court of Appeals in *St. Paul Fire & Mar. Ins. v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981), where it said:

In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue.

The "rule" ... that the insurer has a duty to defend if the allegations of the tort suit raise a "potentiality" that coverage exists, is generally applicable only to the second question set forth above. It may, however, be applicable to an issue raised under the first question set forth above if that issue must also be resolved in the underlying tort suit.

Normally, however, when the question of coverage or defenses under the language or requirements of the insurance policy is separate and distinct from the issues involved in the tort suit, the "potentiality rule" ... has no application. Instead, in a declaratory judgment action like the instant one, presenting an independent coverage issue under the terms of the policy, it is the function of the court to interpret the policy and decide whether or not there is coverage. If such a coverage issue depends upon language of the policy which is ambiguous, the court in the declaratory judgment action nevertheless must resolve that ambiguity in favor of the insured before it can conclude that the insurer has or had an obligation to provide a tort defense.

292 Md. at 193–94, 438 A.2d at 285–86.

Pryseski and his employer, Sun Life Insurance Company of America, were sued in a tort action, alleging Pryseski had made "sexual advances towards the plaintiff." Sun Life was insured by St. Paul Fire and Marine Insurance

Company. The policy also provided coverage for any employee of Sun Life "while acting within the scope of his duties," subject to certain exclusions. St. Paul refused to defend Pryseski on two grounds: (1) he was not acting within the scope of his employment; and (2) his alleged conduct came within one of the exclusions in the policy. The Court held that the first question would be answered in the underlying tort case, but that the meaning of the exclusionary language in the policy was an issue to be resolved in the declaratory judgment action.

Similarly, in *Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 418 A.2d 1187 (1980), the Court said that the issue of whether an employee was acting within the scope of employment must be resolved in the underlying tort case, but proceeded to construe the insurance policy by declaratory judgment.

While holding declaratory judgment inappropriate in *Haynie v. Gold Bond Bldg. Products*, 306 Md. 644, 511 A.2d 40 (1986), the Court said:

The rule precluding a declaratory judgment to resolve an issue when there is pending another action in which the same issue can properly be resolved, is neither jurisdictional nor absolute. *See Aetna Cas. & Sur. Co. v. Kuhl, supra*, 296 Md. [446] at 449 n. 1, 463 A.2d 822 [1983]; *Watson v. Dorsey, supra*, 265 Md. [509] at 512 n. 1, 290 A.2d 530 [1972]; *Grimm v. Co. Comm'rs of Wash. Co., supra*, 252 Md. [866] at 638–639, 250 A.2d 866 [1969].[1] A declaratory judgment may be rendered to

---

1. In *Aetna Casualty & Surety v. Kuhl*, 296 Md. 446, 463 A.2d 822 (1983), the Court decided evidentiary questions in a declaratory judgment proceeding even though it was improper to do so, when neither party contested the propriety thereof. At the same time, the Court suggested the issue may be raised on remand. There too the question was whether the insured had run into the victims intentionally or accidentally, an issue more properly resolved in the tort action. Cases in which this Court has decided declaratory judgment cases involving potential coverage and a duty of the insurer to defend the tort action include (a) no potential coverage and no duty to defend—*General Accident v. Perry*, 75 Md.App. 503, 541 A.2d 1340 (1988); *Pedersen v.*

decide an issue, even though the issue is presented in another pending case between the parties, in "very unusual and compelling circumstances." *A.S. Abell Company v. Sweeney, supra,* 274 Md. [715] at 721, 337 A.2d 77 [1975].

306 Md. at 652, 511 A.2d at 44.

■ Appellant Joseph Harpy asserts that the issue of his intent to cause harm to his daughter will be decided in the tort case, and that decision, in turn, will decide coverage. We disagree. As will be explained in part II hereof, we think there is no factual issue to be determined in the tort case which would affect the question of coverage. Even if there were, we think this is one of those "unusual and compelling circumstances" justifying declaratory relief.

## II

### Summary Judgment

■ The trial court properly ruled that there was no dispute of material facts which could create any potentiality of coverage in this case. Appellants concede there is no coverage for assault and battery (Count 1) or intentional infliction of emotional distress (Count 2). They assert, however, that Joseph Harpy's intent to harm his daughter is a disputed material fact relevant to the potentiality of coverage under Count 3 (negligence). As did the trial judge, we find this absurd. We completely agree with Judge Goudy's holding that "for the [l]aw to define sex

---

*Republic Ins. Co.,* 72 Md.App. 661, 532 A.2d 183 (1987); *Ed. Winkler & Son v. Ohio Cas. Ins.,* 51 Md.App. 190, 441 A.2d 1129 (1982); *American Home Assurance v. Osbourn,* 47 Md.App. 73, 422 A.2d 8 (1980), *cert. denied,* 289 Md. 739 (1981); and (b) potential coverage and duty to defend—*Terra Nova Ins. v. Chillum Corp.,* 71 Md.App. 552, 526 A.2d 642, *cert. denied,* 311 Md. 22, 532 A.2d 168 (1987); *Loewenthal v. Security Ins. Co.,* 50 Md.App. 112, 436 A.2d 493 (1981), *cert. denied,* 292 Md. 596 (1982); *Minnick's, Inc. v. Reliance Ins. Co.,* 47 Md.App. 329, 422 A.2d 1028 (1980). In none of these cases does the propriety of a declaratory judgment appear to have been an issue.

with one's nine to thirteen year old daughter to be anything but intentional injury is ridiculous."

Relying on *Allstate Insurance Co. v. Sparks*, 63 Md.App. 738, 493 A.2d 1110 (1985), appellants assert that Harpy's actual subjective intent to cause the "specific injuries which occurred" is the factual question to be decided, and that his affidavit, that he did not intend or expect "the type of injuries" alleged creates a dispute as to that fact. In the aptly named *Sparks* case, the son of the insured started a fire while stealing gasoline. It was undisputed that he intended to steal the gas but did not intend to start the fire. The homeowner's policy in question excluded coverage for property damage "which is either expected or intended from the standpoint of the [i]nsured." 63 Md.App. at 741, 493 A.2d at 1111–12. We held that the insured must have intended the results, not simply the causing act, for the exclusion to apply, and that a subjective standard governed that determination. Quoting 7A Appleman, *Insurance Law and Practice*, § 4492.02 (1979), we said:

> The word "intent" for purposes of tort law and for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his act or believes that consequences are substantially certain to result from it. In order for an act to be intentional, its consequences must be substantially certain to result as opposed to the feature of wanton acts that the consequences be only probably certain to result....

*Sparks*, 63 Md.App. at 744, 493 A.2d at 1113.

We fail to see how that holding supports appellants' position in this case. There is no substantial certainty that one stealing gasoline will start a fire. There is, however, substantial certainty that sexual molestation of a child by her father over an extended period of time will cause that child to suffer serious harm. *See Reagan v. Rider*, 70 Md.App. 503, 521 A.2d 1246 (1987). While it is true that an intended act causing unintentional injury, under some circumstances, can be considered negligence,

[a]s the probability of injury to another, apparent from the facts within his knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it reaches that substantial certainty of harm which juries, and sometimes courts, may find inseparable from intent itself.

*Ghassemieh v. Schafer,* 52 Md.App. 31, 41, 447 A.2d 84, 89, *cert. denied,* 294 Md. 543 (1982) (quoting Prosser, *Law of Torts* (4th Ed.1971) § 31).

We have been referred to no Maryland case construing exclusionary language similar to that here in connection with facts similar to those in this case. Other courts which have done so have almost unanimously declared that sexual abuse is excluded from coverage by such policies whether an objective or subjective test is applied.

In *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984), McGinnis was sued by his stepdaughter for injuries received as results of sexual assaults and abuse, including sexual relations, from the time the child was 6 years old until she was 16. His homeowner's insurance policy obliged CNA to defend and indemnify him for personal injury suits, but excluded coverage for injury which is "expected or intended" by the insured. CNA sought a declaratory judgment that it was not obligated to defend the suit. McGinnis presented expert testimony that men involved in such activities do not expect or intend that the female will sustain any injury. On cross motions for summary judgment, the trial court held CNA was required to defend because, although McGinnis's acts were intentional, he did not expect or intend injury to the child. Summary judgment for McGinnis was affirmed by the Court of Appeals on a 3–3 tie vote. The Supreme Court of Arkansas reversed. The Court said that where a person's conduct is so certain to cause a particular harm, the person performing the act intends the resulting harm as a matter of law, his statements to the contrary notwithstanding. It held:

The language in an insurance policy is to be construed in its plain, ordinary, popular sense. [citations omitted]

This means that the policy exception excludes coverage for injuries which the average run of reasonable people would expect or intend to inflict by engaging in the conduct in question....

\* \* \* \* \* \*

We agree with the view expressed by the dissent in the Court of Appeals in this case, that for a stepfather in such a situation "to claim that he did not expect or intend to cause injury, flies in the face of all reason, common sense and experience."

666 S.W.2d at 691.

*Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn. 1982) was also a declaratory judgment action to determine coverage. Hill and his wife maintained a home for foster children. During the 15 months that a minor male child lived there, Hill engaged in sexual contact with him. A tort action was filed on behalf of the child. Hill was insured by Fireman's Fund under a homeowner's policy. The policy excluded from coverage "bodily injury or property damage which is either expected or intended from the standpoint of the insured." The Supreme Court of Minnesota said:

In interpreting intentional act exclusions in insurance policies this court has held that it is not sufficient that the act was intentional. To be excluded from coverage, a person must have specifically intended to cause injury, although intent to injure will be found even if the actual injury is different in kind or more severe than that intended.

314 N.W.2d at 835. Citing previous decisions that intent can be inferred when the character of the act is such as to justify such an inference, the court held Hill's conduct such "that an intention to inflict injury can be inferred as a matter of law," and that "Hill's acts are excluded from coverage under the homeowner's policy." *Id.* at 835.

In *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986), an incest victim sought declaratory judgment that her stepfather's homeowner's policy provided coverage.

The relevant exclusionary clause in the policy said coverage did not apply to injury

which is expected or intended by the insured, but this exclusion does not apply to any act committed by or at the direction of the insured not intended to cause serious bodily injury.

729 P.2d at 628.

The Supreme Court of Washington said that intent to injure, while normally a subjective determination under the wording of the policy, would be inferred to the insured in sex abuse cases, and that once the intent is inferred, it is unimportant that the scope of the injuries inflicted are greater than or different from the injuries which might objectively be expected. The Court held:

that the insured intends harm as a matter of law when he commits incest. Applying this test to the subject case, Williams admittedly intended to commit the act of incest which caused his stepdaughter's injuries. Therefore, we hold that Williams intended to injure Daylette as a matter of law irrespective of his actual subjective intent. The exclusion in the subject homeowner's policy applies, and the trial court was correct in denying coverage.

729 P.2d at 630–31.

Cases from other jurisdictions granting declaratory judgment that similar conduct is excluded from coverage under like policies include: *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984); *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400 (1985); *Illinois Farmers Ins. Co. v. Judith G.*, 379 N.W.2d 638 (Minn.App. 1986); *Grange Ins. Ass'n v. Authier*, 45 Wash.App. 383, 725 P.2d 642 (1986); and *Western Nat. Assur. Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954 (1986).

All of the cases above cited granted declaratory relief, even though those states also adhere to the principle of *Brohawn* that declaratory judgments are generally inappropriate where the issue will be decided in another pending case. *See City of Cabot v. Morgan*, 228 Ark. 1084, 312

S.W.2d 333 (1958); *Leach v. Leach*, 172 Cal.App.2d 330, 341 P.2d 758 (1959); *Nims v. Grand Trunk Western R. Co.*, 326 Mich. 371, 40 N.W.2d 188 (1949); *Grain Dealers Mut. Ins. Co. v. Cady*, 318 N.W.2d 247 (Minn.1982); *cf. King County v. Boeing Co.*, 18 Wash.App. 595, 570 P.2d 713 (1977) (declaratory judgment inappropriate where plaintiff has completely adequate remedy available unrelated to the declaratory relief sought).

Appellants refer us to one case which appears to disagree with those cited. In *MacKinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984), the Supreme Court of New Hampshire held that "bodily injury . . . expected or intended by the insured" means the actual expectation or intention in the mind of the insured at the time he took the action allegedly resulting in injury. That court declined to infer as a matter of law that the insured intended injury when he sexually abused his 6–year–old stepdaughter. We think this case is distinguishable. The "negligent" conduct for which coverage was sought in that case was alleged "negligent infliction of emotional distress," a tort for which no independent cause of action exists in Maryland. *Chew v. Meyer*, 72 Md.App. 132, 527 A.2d 828, *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987); *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 502 A.2d 1057, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986). To the extent that *MacKinnon* is not distinguishable, we decline to follow it.

We hold that declaratory judgment was appropriate under the facts of this case and that the trial court correctly granted summary judgment.

JUDGMENT AFFIRMED; APPELLANTS TO PAY COSTS.