**BLUE RIDGE INSURANCE COMPANY, Plaintiff,**

v.

**Guy E. PUIG, Defendant.**

**No. L–99–558.**

United States District Court, D. Maryland.

Sept. 28, 1999.

Margaret Fonshell Ward of Semmes, Bowen & Semmes, Baltimore, MD, for plaintiff.

Robert W. MacMeekin, Fine, Gibbons, & MacMeekin, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

BREDAR, United States Magistrate Judge.

In this diversity action, Blue Ridge Insurance Company ("Plaintiff" or "insurer") seeks declaratory relief pursuant to 28 U.S.C. § 2201. The insurer has asked this Court to find that it has no duty to defend and indemnify Guy E. Puig ("Defendant" or "insured") in an underlying tort action pending against him in the Circuit Court for Baltimore City. (Paper No. 1). This action has been referred to the undersigned by consent of the parties for all further proceedings (Paper No. 8), and pending before the Court are cross motions for summary judgment. (Paper Nos. 10–11).

### I. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Pulliam Inv. Co. v. Cameo*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim: "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. On the other hand, on those issues on which the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), aff'd, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### II. Background

The relevant facts are essentially uncontested. From September 25, 1997, through December 14, 1999, Defendant maintained a homeowners insurance policy with Plaintiff. (Paper No. 10, Exhibit A). Subject to various terms and conditions, Plaintiff agreed to provide: 1) coverage up to a limit of $100,000 per occurrence and 2) a legal defense to any claim made against the insured for damages because of bodily injury or property damage caused by an occurrence to which the coverage applied. The policy specifically excluded from coverage any bodily injuries or property damage either "arising out of or in connection with a 'business' engaged in by an 'insured' " or "resulting from an act or omission by or at the direction of any 'insured'

which is reasonably expected or intended to cause a loss."

Defendant has been sued in the Circuit Court for Baltimore City, in an action entitled *Dennis and Deborah Bundra v. Guy Puig*, and designated as Civil Case No. 98410364. (Paper No. 10, Exhibit B). In his complaint against Defendant in that action, Dennis Bundra alleges both battery and negligence. Mr. Bundra alleges that on December 9, 1997, while the policy was in effect, he and Mr. Puig were both at work at their place of employment, a United States Postal Service facility in Baltimore. At approximately 9:00 a.m., Mr. Bundra was sitting on the commode in the men's restroom of the post office. The commode was enclosed in a private stall with a latched door on the front of the stall. Mr. Bundra alleges that while in that position, Mr. Puig kicked or pushed the door of the stall with so much force that the latched door swung open and hit Mr. Bundra.

In a recorded statement provided by Defendant to Blue Ridge on January 14, 1999, Defendant offered additional detail about the dispute that led to his actions. (Paper No. 10, Exhibit C). Defendant explained that he and Mr. Bundra were involved in a disagreement over responsibility for performing particular functions at work on the day of the incident. When Defendant went into the men's room to relieve himself, he overheard Mr. Bundra talking with another co-worker about the disputed work obligations. In the interview, Defendant stated that after further hearing Mr. Bundra make what Defendant took to be a racial slur against him:

> I turned towards the stall. I took my foot, and I kicked the door which was locked. The door swung open. Mr. Bundra saw that it was me, because he was seated on the stool. I just shook my head at him. Got control of myself and walked out.

(Paper No. 10, Exhibit C, Page 5).

In his Motion for Summary Judgment, Defendant characterized his actions as "an embarrassing 'heads up'" and "a wake-up call." (Paper No. 11, Page 2). He explained that he "sent a message to Bundra when the latter made a racial slur. [He] kicked a door he knew to be locked and the intended effect was realized, to his thinking, [when] Bundra 'just had a look of amazement on him.'" *Id.*

### III. Analysis

██ Defendant correctly observes that Maryland generally disfavors declaratory judgment actions brought by liability insurers where the Court must resolve an insurance coverage issue that is identical to an issue presented in a pending, underlying tort action: "If the plaintiffs in the [underlying] tort suits allege a claim covered by the policy, the insurer has a duty to defend." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842, 850 (1975) (citations omitted). *See also Lititz Mutual Ins. Co. v. Bell*, 352 Md. 782, 724 A.2d 102, 107 (1999). Moreover, "even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." *Id.* (citations omitted).

██ The Maryland Court of Appeals has identified certain circumstances, however, where this general rule does not apply. In *Pettit v. Erie Ins. Exch.*, 349 Md. 777, 709 A.2d 1287 (1998), the Court of Appeals held that although declaratory judgment actions were generally disfavored in this context, "such relief is appropriate prior to trial of the tort action where the allegations in the underlying tort claims 'obviously constitute a patent attempt to recharacterize, as negligent, an act that is clearly intentional.'" *Id.* at 1289 (*quoting Allstate Ins. Co. v. Atwood*, 319 Md. 247, 572 A.2d 154, 157 (1990)). The Court recognized that "because both the plaintiff and the defendant in a tort suit share a common interest in coverage being applicable, there may be collusion and an effort to manipulate coverage.... Both parties to the tort action profit by a jury's

ruling that even the most blatant criminal and/or intentional acts [are] negligent conduct." *Id.* (internal citations omitted).

■ Accordingly, where the undisputed facts of a case clearly support a finding of an intentional tort as a matter of law, the Maryland Court of Appeals has held that declaratory relief is appropriate and that the insurer has no duty to defend, regardless of how the plaintiff in the underlying tort suit frames the complaint. *See e.g., id.; Lititz Mut. Ins. Co. v. Bell,* 352 Md. 782, 724 A.2d 102 (1999); *Harpy v. Nationwide Mut. Fire Ins. Co.,* 76 Md.App. 474, 545 A.2d 718 (Md.Ct.Spec.App.1987). In *Pettit,* for example, a mother alleged that the insured had negligently sexually molested her minor children. *Id.* at 1288. She argued that the defendant's actions were negligent, not intentional, because he did not intend to injure the children. *Id.* Citing the Restatement (Second) of Torts, the Court of Appeals held that "[b]y definition, [the defendant's] sexual molestation of the boys constituted common law battery.... If the act is done with the intention of making the offensive contact, it is immaterial that the actor is not motivated by any personal hostility or intent to injure." *Id.* at 793–94, 709 A.2d 1287. Therefore, the Court affirmed summary judgment for the insurer. *Id.* Similarly, *Lititz* involved a psychiatric patient who admitted hitting his nurse, but argued that due to his psychiatric condition, he did not intend to injure the nurse. *Id.* at 108. The Court of Appeals held that the defendant "need only have intended to bring about the offensive contact, that is, to intend to strike [the tort plaintiff] in order for his conduct to be considered a battery. That much is admitted by Bell." *Id.* at 108. Because all of the facts relevant to deciding the insurance coverage issue were undisputed, the Court granted summary judgment to the insurer.

■ In the present case, the essential facts are undisputed, and therefore, declaratory relief is appropriate under Maryland case law even though the underlying suit is still pending. The parties agree that Defendant knew that Mr. Bundra was seated immediately behind the restroom stall door when Defendant intentionally kicked the stall door with such force that it swung open despite a fastened lock. (Paper No. 10, 11). Defendant admits in his own motion for summary judgment that his actions were intended to be "an embarrassing 'heads up'" and "a wake-up call," and that he "kicked a door he knew to be locked and *the intended effect* was realized, to his thinking, [when] Bundra 'just had a look of amazement on him.'" (Paper No. 11) (emphasis added). Based on the pleadings, therefore, no factual issues relevant to insurance coverage remain to be resolved in the underlying tort action, and therefore declaratory relief is appropriate.

The Court acknowledges that a number of other factual issues in the underlying tort suit may be jury questions. Because the Court's inquiry in the present case is limited to whether Mr. Bundra's civil tort complaint creates the possibility of coverage, the Court need not decide every question in the underlying tort suit. For example, whether the restroom stall door actually hit Mr. Bundra appears to remain a jury question.[1] The resolution of this question, however, has no bearing on whether Defendant's actions fall within the scope of his insurance coverage. Defendant admitted that he intentionally kicked the stall door open. Accordingly, regardless of what the door did after that point, Defendant's actions could not be characterized as negligent, and therefore, no potentiality of coverage exists. If the door hit Mr. Bundra, then the Defendant's actions amounted to intentional battery. If the door did not hit Mr. Bundra, then

---

1. Defendant explained in a recorded statement given to the insurer that he did not see the door hit Mr. Bundra or hear Mr. Bundra say anything at the time. (Paper No. 10, Exhibit C). Defendant further suggested that Mr. Bundra's injuries were in fact the result of a previous car accident. These statements may create a jury question as to whether there was any contact between the stall door and Mr. Bundra.

Defendant's actions constituted intentional assault[2] (although Mr. Bundra did not plead assault in his complaint) because this Court finds that when a person violently kicks in the door of a toilet stall they know is occupied, they intend to place the person inside in apprehension of receiving an immediate battery. Regardless of whether the door actually hit Mr. Bundra, the Defendant's actions were clearly intentional, and the insurer owes no duty to defend or indemnify.

Defendant contends that the uncontested facts reveal a potentiality of coverage, and therefore summary judgment for the insurer is inappropriate. Defendant first argues that even though he intended to kick the stall door, there is no evidence that he intended for the stall door to contact Mr. Bundra or that "he tried to do more than shock the loose[-]talking acquaintance." (Paper No. 11). Defendant suggests that kicking open the restroom stall door "might be viewed as an action intended to scare the person inside or intended to intimidate for some other reason and not necessarily to cause specific injury." *Id.* In essence, Defendant is contending that he intentionally frightened Mr. Bundra but that he did not intend any subsequent contact, and therefore, any resulting injury was not the product of battery but of Defendant's negligence, which is covered under his insurance policy.

The fear that Defendant's act generated in Mr. Bundra was a fear of bodily injury. No matter how Defendant (or Mr. Bundra) now wants to characterize the conduct, kicking in the locked door of an occupied toilet stall was all about causing the person inside to fear imminent physical harm, plain and simple. The conduct speaks for itself: it was intentional and not merely

negligent, and thus it amounted to an assault. As a theoretical matter, assault easily ripens into a battery—all that is needed in addition is an offensive contact. The Maryland Court of Appeals has held that the intent element of battery requires "not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact *or an apprehension of such contact.*" *Nelson v. Carroll*, 355 Md. 593, 735 A.2d 1096 (1999) (emphasis added). In other words, "when one commits an assault, and in the course of committing the assault that person comes into contact with the person assaulted, the intent element of battery may be supplied by the intent element of the assault." *Id.* at 1101.

Under the circumstances of this case, this Court finds as a matter of law that Defendant intentionally assaulted the plaintiff. Regardless of whether his intention was, as Defendant suggests, merely to "scare" or "intimidate" the Defendant when he kicked in the restroom stall door, Defendant intended to invade Mr. Bundra's well-being through the apprehension of a harmful or offensive contact. Under *Nelson*, Defendant's intent to assault Mr. Bundra supplies the intent element for a subsequent battery, if contact occurred. The fact that Mr. Bundra has sued Defendant for negligence in addition to battery is irrelevant to the conclusion that the subject of Mr. Bundra's tort suit falls outside the scope of his homeowners insurance policy, and therefore Plaintiff has no obligation to provide either coverage or a defense.

Defendant also argues that even if he were found to have intended for the door

---

**2.** At common law, "Maryland recognize[d] two forms of assault: '(1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery.'" *Ford v. Maryland,* 330 Md. 682, 625 A.2d 984, 992 (1993) (quoting *Snowden v. State,* 321 Md. 612, 583 A.2d 1056, 1059 (1991)). In 1996, the Maryland State Legislature enacted criminal assault statutes

that incorporated by reference the common law definition of assault. Md.Ann.Code art. 27 § 12(b) (1996); *see Robinson v. Maryland,* 353 Md. 683, 728 A.2d 698, 703 (1999). The Court of Appeals has noted that "assault" "has substantially (if not exactly) the same meaning in our law of torts as in our criminal law." *Kellum v. Maryland,* 223 Md. 80, 162 A.2d 473, 476 (1960).

to contact Mr. Bundra, he nevertheless had no subjective intent to injure Mr. Bundra. Admittedly, in at least one case, the Maryland Court of Appeals has stated that in insurance coverage cases, the insured must not only intend his actions, but also the consequences of his actions. *See, e.g., Allstate Ins. Co. v. Sparks,* 63 Md.App. 738, 493 A.2d 1110, 1113 (Md.Ct. Spec.App.1985) ("The word 'intent' for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his act or believes that consequences are substantially certain to result from it."). That Court has also noted, however, that "[a]s the probability of injury to another, apparent from the facts within his knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it reaches that substantial certainty of harm which juries, and sometimes courts, may find inseparable from intent itself." *Harpy v. Nationwide Mut. Fire Ins. Co.,* 76 Md. App. 474, 545 A.2d 718 (Md.Ct. Spec.App.1988).[3] Under *Nelson,* Defendant's intention to assault Mr. Bundra supplies the intent to make any actual contact a battery. If physical injuries actually occurred, they were the product of an intentional act, and thus, under *Nelson,* their infliction constitutes battery.[4]

This Court's decision rests upon even surer footing because the insurance policy specifically excludes not only intentional acts but also any acts "reasonably expected ... to cause a loss." Even if this Court could find Defendant did not intend to hit or injure Mr. Bundra with the door or to put him in immediate apprehension of the same, this Court would and does find as a matter of law that when the door to a small restroom stall is kicked with such force that it swings open despite a fastened latch, that door can be "reasonably expected" to make contact with an individual seated on the commode immediately behind the door.

In sum, the parties signed a homeowners insurance policy that specifically excluded from coverage all acts or omissions "reasonably expected or intended to cause a loss." In this case, Defendant turned toward a locked restroom stall and intentionally kicked the door open. In layman's terms, Defendant intended to deliver "a wake-up call" to Mr. Bundra. In legal terms, Defendant intentionally placed Mr. Bundra in apprehension of immediate battery. Under either characterization, Defendant's actions were not accidental or negligent, and they fall squarely within the policy's exclusion. This Court holds that Plaintiff has no duty to defend or indemnify Defendant in the underlying tort suit. Accordingly, by separate order Defendant's Motion for Summary Judgment will be denied and Plaintiff's Motion for Summary Judgment will be granted.

---

**3.** In assault and battery case, in particular, the Maryland Court of Appeals has even held that "where the facts indicate a battery, the harm is the contact itself.... Where the actor intends to cause an offensive contact, the legally recognized harm, ipso facto, cannot be said to have taken place without his foresight or expectation." *Lititz,* 724 A.2d at 110.

**4.** And, as stated above, even if there were no contact, the event at a minimum amounted to an assault and then for that reason was outside the scope of coverage.