709 A.2d 1287

**Gloria PETTIT**

v.

**ERIE INSURANCE EXCHANGE.**

**No. 96, Sept. Term, 1997.**

Court of Appeals of Maryland.

May 21, 1998.

Steven M. Nemeroff (Wortman & Nemeroff, P.A., on brief), College Park, for petitioner.

Charles E. Wilson, Jr., (Amy Leete Leone, McCarthy, Wilson & Ethridge, all on brief), Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RODOWSKY, Judge.

This is a declaratory judgment action concerning personal liability insurance coverage for a pedophile who was sued for sexual child abuse. We shall hold that the exclusion for injuries expected or intended by the insured applies,

despite the pedophile's subjective belief that his conduct caused no harm.

Petitioner, Gloria Pettit (Pettit), as mother and next friend of her two minor sons, sued James Kowalski (Kowalski) in the Circuit Court for Prince George's County alleging, purportedly under several theories of negligence, that Kowalski had sexually molested the boys. The amended complaint averred that Kowalski became acquainted with the Pettit family in April of 1991. When the boys' father died approximately one year later, Kowalski began to spend more time with, take care of, and supervise the Pettit children. Between April 1, 1991, and May 25, 1993, Kowalski engaged in sexual activities with the Pettit children at his residences in Maryland and Virginia, including fondling, undressing, masturbating, and performing oral sex. He encouraged and permitted others to molest the boys. Kowalski also videotaped these activities. The boys were seven and nine years old at the time the abuse began.

During that twenty-six-month span, Kowalski was insured under four separate policies issued by the respondent, Erie Insurance Exchange (Erie). Those policies are: (1) Q52–0105754, an Erie HomeProtector Policy 2003 Extracover Edition; (2) Q55–2704047, an Erie HomeProtector Policy 2003 Extracover Edition running consecutively to the first; (3) Q41–0180158, an Erie Ultrasure Policy for Landlords; and (4) Q53–0108729, an Erie 2004 Tenantcover Policy. The policies listed (1), (2), and (4) each contain a provision which excludes liability coverage for "injury or damage expected or intended by anyone we protect." The policy listed (3) excludes liability coverage for "injury or damage expected or intended from the standpoint of anyone we protect."

Kowalski demanded that Erie defend him in the action brought by Pettit. Erie instead filed an action seeking a judgment declaring that Erie had no duty to indemnify or defend Kowalski as his acts of sexual abuse were intentional, and thus excluded under the "intentional injury" provision found in each of Kowalski's policies. Kowalski, Pettit, and the two children were named as defendants in the declaratory

judgment action. The underlying tort action has been stayed pending the outcome of the action that is now before us.

■ The circuit court concluded on summary judgment that the intentional injury provisions in the policies excluded adult sexual molestation of children as a matter of law, and it entered an order declaring the rights of the parties to that effect. A divided panel of the Court of Special Appeals affirmed. *Pettit v. Erie Ins. Exch.*, 117 Md.App. 212, 699 A.2d 550 (1997). That court held "that an adult insured's intent to engage in sexual contact with a child embodies an intent to injure for the purpose of applying the intentional injury exclusion." *Id.* at 232, 699 A.2d at 560 (footnote omitted). We agree.

■ Erie is entitled to a summary judgment declaring that it has no duty to defend Kowalski only if it is manifestly clear that in the underlying tort suit the petitioner cannot allege facts giving rise to a potentiality of coverage. *See Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408, 347 A.2d 842, 850 (1975) ("Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy."). Although declaratory judgment actions are disfavored in liability insurance coverage cases while the underlying tort action is pending, such relief is appropriate prior to trial of the tort action where the allegations in the underlying tort claims "obviously constitute a patent attempt to recharacterize, as negligent, an act that is clearly intentional. . . ." *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 253, 572 A.2d 154, 157 (1990); *see also Brohawn*, 276 Md. at 406, 347 A.2d at 849. Under the unique circumstances in *Atwood*, this Court permitted a post tort-trial, declaratory judgment coverage action after the jury in the tort case may well have found that a battery was negligence. We examined how, because both the plaintiff and the defendant in a tort suit share a common interest in coverage being applicable, there may be collusion and an effort to manipulate coverage. As a result, "plaintiffs' attorneys bring suits for 'negligent rape,

negligent sodomy, ... and negligent sexual molestation.'"
*Atwood,* 319 Md. at 253, 572 A.2d at 156–57 (quoting Brief of
Allstate Ins. Co.). Both parties to the tort action profit by a
jury's ruling that " 'even the most obvious and blatant criminal
and/or intentional acts [are] negligent conduct.'" *Id.* at 253,
572 A.2d at 157 (quoting Brief of Allstate Ins. Co.).

Such a situation has arisen here. In the underlying tort
suit, petitioner, as plaintiff, alleged that the defendant Kowal-
ski had

> "committ[ed] fellatio and oral sex with the minor Plaintiffs
> with injury; undressed the minor Plaintiffs, and exposed
> himself to the minor Plaintiffs; ... fondl[ed] the minor
> Plaintiffs; and filmed these pedophile activities, all of which
> was for the purpose of [Kowalski's] self gratification and
> satisfaction of [his] sexual fantasies as a pedophile."

In this declaratory judgment case, however, petitioner at-
tempts to characterize that very same activity as Kowalski's
failure to refrain from unreasonable conduct, to warn of his
pedophilia, and to take reasonable precautions to protect
children in his care from a risk of harm. Such characteriza-
tions were rejected in *Atwood.*[1]

In *Harpy v. Nationwide Mut. Fire Ins. Co.,* 76 Md.App.
474, 545 A.2d 718 (1988), the Court of Special Appeals, consid-

---

1. Petitioner analogizes to two cases, *Faya v. Almaraz,* 329 Md. 435, 620
A.2d 327 (1993), and *B.N. v. K.K.,* 312 Md. 135, 538 A.2d 1175 (1988),
in support of this "negligent sexual molestation" action. In *Faya,* this
Court held that a physician who knew he had AIDS had a duty to warn
his patients of his condition before engaging in the kind of contact (in
that unique case, surgery) in which AIDS might be transmitted; simi-
larly, in *B.N.,* this Court held that a man who knew he had incurable
genital herpes had a duty to warn his partner before engaging in sexual
relations. From these two cases, petitioner draws the strange conclu-
sion that Kowalski had a duty to warn the victims or their mother of his
pedophilia. Petitioner's analogy misses the fundamental point that the
underlying contact in *Faya* and *B.N.* was consensual. Had the tortfea-
sors in those cases adequately warned their adult victims, the latter
could have decided whether to give or withhold consent based on full
information. Here, the victims could not have decided whether or not
to consent to Kowalski's abuse, even if they were warned, and no one
could consent for them. *See* Restatement (Second) of Torts § 892A
(1979).

ering a case remarkably similar to the case at bar, held that sexual activity between an adult and a minor child is *per se* injurious. There a daughter sued her father alleging sexual abuse which occurred between the ages of nine and thirteen and predicated the action on (1) assault and battery, (2) intentional infliction of emotional distress, and (3) negligence. The father was covered for personal liability by two homeowner's insurance policies issued by Nationwide, each of which excluded coverage for injury " 'which is expected or intended by the **insured.**' " *Id.* at 477, 545 A.2d at 720. Mr. Harpy requested Nationwide's defense based on the third count of negligence. In order to evade summary judgment for the insurer, Mr. Harpy filed an affidavit swearing " 'that I have never taken any action with regard to my daughter . . . in which I intended or expected that she would suffer *the type of injuries* that she has alleged in her Complaint against me.' " *Id.* Mr. Harpy contended that his "intent to harm his daughter [was] a disputed material fact relevant to the potentiality of coverage under Count 3 (negligence)." *Id.* at 482, 545 A.2d at 722. The Court of Special Appeals found such a claim to be "absurd," holding that sexual activity between an adult and a minor child was an intentional tort, injurious *per se. Id.* at 482, 545 A.2d at 722–23. Accordingly, Nationwide was entitled to summary judgment that there was no potentiality of coverage.

In the instant action the Court of Special Appeals relied heavily on its decision in *Harpy* and demonstrated that *Harpy* is in accord with the overwhelming majority of decisions elsewhere on the issue. *Pettit,* 117 Md.App. at 230–31, 699 A.2d at 560. Petitioner, however, seeks to distinguish *Harpy* and similar holdings in essentially three ways, none of which is persuasive.

## I

First, petitioner contends that *Harpy* involved "violent unconsensual rape," but characterizes the conduct engaged in by Kowalski as "involv[ing] many forms of consensual conduct . . . normally reserved for adult relationships." Brief of "Ap-

pellants" at 36. Under Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 464A(a)(3) a person is guilty of a second degree sexual offense who "engages in a sexual act with another person ... [u]nder 14 years of age and the person performing the sexual act is four or more years older than the victim." [2] Under § 464B(a)(3) a person is guilty of a third degree sexual offense who engages in "[s]exual contact with another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim." [3] Some of Kowalski's conduct amounts to a sexual act in violation of § 464A(a)(3) and other of Kowalski's conduct violates § 464B(a)(3). *See Martin v. State*, 113 Md.App. 190, 238, 686 A.2d 1130, 1153–54 (1996) (caressing a victim's genital area is legally sufficient evidence of "sexual contact" under § 461(f)); *see also Shand v. State*, 341 Md. 661, 674–77, 672 A.2d 630, 636–38 (1996) (analyzing legislative history of § 461(f)).

Under either section, Kowalski's seven and nine year old victims could not have legally consented to the sexual activities. Both §§ 464A and 464B contain a subsection (a)(1), in which the respective offenses apply if the criminal behavior is "against the will and without the consent of the other person." Unlike subsection (a)(1), however, subsection (a)(3) of each statute contains no such requirement, and a purported consent by the victim is no defense.

■ Moreover, petitioner's use of the word "violent" to differentiate *Harpy* from the instant case is similarly inappropriate. Child sexual abuse is an affront to the dignity of the child—an invasion of the child's autonomy—because a child cannot appreciate or comprehend the full nature of the sexual acts. *See Doe v. Archdiocese of Washington*, 114 Md.App.

---

**2.** Article 27, § 461(e) provides: " 'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required."

**3.** "Sexual contact" is defined by Art. 27, § 461(f) as including "the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification."

169, 186, 689 A.2d 634, 643 (1997). While it is undoubtedly worse to couple sexual molestation of a child with physical injury, such a distinction differs in degree, not in kind. The essence of child sexual abuse is the violation of the dignitary interest, whether there is physical injury or not. *See id.; see also* Restatement (Second) of Torts § 18 cmt. *c* (1979) ("Since the essence of the plaintiff's grievance consists in the *offense to the dignity* involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body, it is not necessary that the plaintiff's actual body be disturbed." (Emphasis added)).

## II

Petitioner's principal contention is that Kowalski had no subjective intent to harm his victims.[4] In support petitioner points to the uncontradicted affidavit of Dr. Neil H. Blumberg, a psychiatrist who, based on a review of Kowalski's medical records, concluded that Kowalski "suffered from a mental disorder known as pedophilia" and that "he did not have the intent to harm these two children." The affiant stated that

> "[t]his disorder is not characterized by intent to injure or harm their sexual partner. To the contrary, it is motivated by their own need for sexual gratification and is based upon their belief that their relationship and sexual activity with the child is healthy and normal."

---

4. Kowalski's affidavit, in relevant part, reads:

    "2. During my care and supervision of [the Pettit children], I did not intend nor expect to injure [the Pettit children]. To the contrary, at all times, I provided care and supervision for these two children with the intent and expectation to aid, comfort and assist them.... Contrary to intending or expecting to injure [the Pettit children], my course of conduct, clearly demonstrates that I routinely provided care and supervision of these children with the intent and expectation to aid, care, comfort and support them at all times. In fact, prior to May 25, 1993, I designated [the Pettit children] as beneficiaries of my Will because I love them so much.

    "3. I love these children and any sexual behavior or conduct the children and I engaged in were mutual and consensual expressions of our love for each other."

Petitioner submits that, in deciding if there is insurance coverage, whether an injury is expected or intended by the insured is determined by the insured's subjective intent. Although petitioner acknowledges that Kowalski intended to engage in the conduct constituting sexual acts and contacts, the submission is that Erie's policies cover such conduct because Kowalski subjectively believed that the sexual acts and contacts were not harmful to the children. Legal support for this position, petitioner asserts, is found in *Allstate Ins. Co. v. Sparks*, 63 Md.App. 738, 493 A.2d 1110 (1985), and in *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 687 A.2d 1375 (1997).

Erie does not join issue with petitioner over whether injury expected or intended by the insured ordinarily is determined by the insured's subjective intent. Further, Erie does not seek to distinguish its policy that excludes for injury expected or intended "from the standpoint of" the insured from the policies that do not include the quoted language. Erie's position is that in cases of sexual molestation of a child by an adult, the conduct is intentional as a matter of law for the purpose of construing an intentional conduct exclusion in an insurance policy. Thus, the subjective belief of the insured as to whether harm was intended is immaterial.

Petitioner's repeated reliance upon *Sparks* is misplaced. In that case, three youths attempted to siphon gasoline at night from a truck parked near a mill. One of the boys, displaying "an extraordinary lack of good judgment," lit a cigarette lighter in order to provide some light. The flame ignited gas fumes and resulted in a fire which destroyed the mill and virtually everything inside. In a declaratory judgment action brought by the insurer of one of the boys it was held that there was a potentiality of coverage. *Sparks*, 63 Md.App. at 740, 493 A.2d at 1111. The Court of Special Appeals held that "the insured must have intended the results ('damages'), not simply the causing act, for coverage not to apply." *Id.* at 742, 493 A.2d at 1112. Because the boys intended to steal gasoline from a truck and the resulting harm was the destruction of a mill by fire, the loss was more properly characterized as accidental.

Petitioner also misreads the holding of this Court in *Bailer*. There, the insured secretly videotaped his au pair while she was in the shower. The insured had been issued a policy which, as here, contained an intentional act exclusion. The policy in *Bailer*, however, also contained a specific provision *including* coverage for liability resulting from "invasion of privacy." *Bailer*, 344 Md. at 520–21, 687 A.2d at 1377–78. Due to the fundamental incompatibility between these two provisions, this Court held that the policy was ambiguous and that the insurer, Erie, was obligated to provide coverage. The *Bailer* Court never characterized voyeuristic sexual activity as negligent.

Indeed, one aspect of *Bailer* has particular relevance to the petitioner's argument in this case. In an attempt to argue that its policy was unambiguous, Erie contended that this Court should "distinguish[ ] between intended means and an unintended or unexpected result." *Id.* at 528, 687 A.2d at 1381. This Court declined to do so, holding instead that a voyeuristic invasion of privacy is the type of tort which "must always be intentional in order to be tortious, and it is the intrusion that constitutes the harm against which that form of invasion of privacy is intended to protect.... The insured's conduct, the invasion, and the claimant's harm, the invasion, are one and the same." *Id.* at 534, 687 A.2d at 1384–85.

Similarly, in the instant case, sexual molestation is a tort which is only committed intentionally. There is no dichotomy between the "damages" resulting from Kowalski's conduct and his intent to perform the acts of sexual child abuse. Unlike *Sparks*, the harm committed by Kowalski—sexual molestation of two young boys—is entirely contained within the activity which he admits; the resulting harm *is* Kowalski's conduct itself. *See Doe*, 114 Md.App. at 186, 689 A.2d at 643 ("In a case of battery ... the invasion of the victim's dignitary interest is invariably concurrent with the actions that constitute the intentional tort itself."); Restatement (Second) of Torts § 19 (1979).

Prior to the instant matter, Maryland appellate courts have not considered whether pedophilia is relevant to one's capacity to form intent under traditional tort principles. Other jurisdictions which have addressed this question, however, have concluded that it is not. *See State Farm Fire & Cas. Co. v. Jenner*, 874 F.2d 604, 607 (9th Cir.1989), *rev'g* 856 F.2d 1359 (9th Cir.1988) (reversing an earlier Ninth Circuit decision in which the defendant's pedophilia was found relevant in determining intent; holding that sexual molestation "creates an inference of an intent to injure that may not be overcome by evidence of a subjective lack of intent to harm"); *Fire Ins. Exch. v. Abbott*, 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620 (1988) (holding that medical testimony regarding defendants' pedophilia was irrelevant, because it "was primarily concerned with whether the insureds subjectively intended to injure their victims"); *Allstate Ins. Co. v. Jarvis*, 195 Ga.App. 335, 393 S.E.2d 489, 490–91 (1990) ("[M]ost courts infer a specific intent to injure as a matter of law . . . .") (considering cases); *Sara L. v. Broden*, 507 N.W.2d 24, 26 (Minn.Ct.App.1993) ("We will not consider the subjective intent of the offender in such cases, even where the parties stipulated that the insured did not intend to inflict bodily injury or mental suffering."); *Atlantic Employers Ins. Co. v. Tots & Toddlers Pre–School Day Care Center, Inc.*, 239 N.J.Super. 276, 571 A.2d 300, 304 (App.Div.) ("A subjective test suggests that it is possible to molest a child and not cause some kind of injury, an unacceptable conclusion. Certainly, one would and should expect some physical or psychological injury or both, to result from such acts."), *cert. denied*, 122 N.J. 147, 584 A.2d 218 (1990).

*Wiseman v. Leming*, 574 N.E.2d 327 (Ind.Ct.App.1991), is indistinguishable from the case now before us. In *Wiseman* the plaintiff appealed from a summary judgment in favor of the insurer holding that there was no coverage for bodily injury expected or intended by the insured. The plaintiff relied on the testimony of a psychologist who opined that the child molester had no intent to injure or harm the victim. This testimony, argued the plaintiff, created a question of

material fact that prevented summary judgment. Affirming the trial court, the Court of Appeals of Indiana said:

> "This Court, in agreeing with other jurisdictions, finds that the defendant's acts of child molestation in this case, which are proscribed by our criminal statutes due to the heinous nature of such acts, are inherently harmful to the victim of the crime. Therefore, it can be inferred from these acts that the defendant intended to harm the victim. In so holding, this Court finds that the subjective intent of the defendant is irrelevant."

*Id.* at 329.

The cases on the issue before us are collected in a law review article, C.L. Mueller, Comment, *Ohio Homeowners Beware: Your Homeowner's Insurance Premium May Be Subsidizing Child Sexual Abuse*, 20 U. Dayton L.Rev. 341 (1994). The author, after referring to three decisions upholding the position advocated by the petitioner in the instant case, gives the following summary:

> "These earlier decisions were based, in part, on a desire to compensate the victim. Subsequent decisions, however, either have not followed, or have overturned these earlier decisions. Since 1982, courts in at least thirty-three states have decided that the intent to injure is inferred as a matter of law from the intent to commit child sexual abuse. Thus, in these states, the child sexual abuser's homeowner's insurance company does not have a duty to indemnify the insured."

*Id.* at 346 (footnotes omitted). The Mueller law review article was prompted by a split on the issue among Ohio intermediate appellate courts. *Id.* at 347 n. 31. Subsequent to the Mueller article the Supreme Court of Ohio adopted the majority rule. *See Cuervo v. Cincinnati Ins. Co.*, 76 Ohio St.3d 41, 665 N.E.2d 1121 (1996); *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 665 N.E.2d 1115 (1996).[5]

---

5. Two of the three earlier cases referred to by Mueller are cited by the petitioner in the instant matter. One is *State Auto Mut. Ins. Co. v.*

## III

Petitioner's third attempt at distinguishing this claim from the majority rule is to claim that the specific policy at issue in the instant case "involves different issues of contract construction and interpretation." Brief of "Appellants" at 37. Specifically, petitioner claims that Erie could have included the "sexual molestation exclusion" found in some of its other policies and thereby expressly excluded from coverage acts such as those committed by Kowalski.[6] Erie tells us that the sexual molestation exclusion was not approved by the Insurance Commissioner for use in Maryland until after the period during which the subject abuse occurred.[7] We shall treat these positions as presenting a factual dispute, but it is not a material one. See Maryland Rule 2–501(a).

---

*McIntyre*, 652 F.Supp. 1177 (N.D.Ala.1987), a diversity case. The rationale of that case was rejected by the Supreme Court of Alabama. *See* State Farm Fire & Cas. Co. v. Davis, 612 So.2d 458 (Ala.1993). Petitioner also cited *MacKinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984). *MacKinnon* has been cited thirteen times by other courts, including the Court of Special Appeals in the action now before us, but none of these courts have agreed with the subjective intent approach in child sex abuse cases.

**6.** Note here that this argument contains an implicit admission that insurance companies and courts can successfully identify instances of "sexual molestation" for purposes of excluding it from coverage. This admission refutes petitioner's absurd argument advanced on brief and in oral argument that a decision in favor of Erie would create a regime in which "every time an adult kisses a child or touches their genitalia (i.e. while changing their diaper), it is substantially certain that injury is intended or expected to occur." Brief of "Appellants" at 25. Obviously, the law is capable of drawing distinctions between molestation for the purpose of sexual gratification and affection.

**7.** The record contains a HomeProtector policy, 2004 Tenantcover edition, which insures against personal liability arising out of the "business pursuits of educators while employed by others, including corporal punishment of pupils." The provision is an exception to the general exclusion for bodily injury or property damage arising out of business pursuits. The policy further excludes, except as to business pursuits of educators, "bodily injury or property damage which arises out of the sexual molestation, corporal punishment or physical or mental abuse by anyone we protect."

Petitioner's contract construction argument is that Erie's failure to use a "sexual molestation" exclusion in the policies issued to Kowalski reflects an intent to provide coverage for sexual molestation. Such an inference requires as its predicate the notion that a "sexual molestation" exception—if such conduct were already prohibited under a general provision excluding all intentional torts—would be impermissibly redundant.

This inference does not flow logically. As the Court of Special Appeals noted in this case, "liability insurance policies often contain both broad exclusions and specific exclusions that overlap." *Pettit,* 117 Md.App. at 221, 699 A.2d at 555; *see also Sparks,* 63 Md.App. at 743, 493 A.2d at 1112 (holding that an intended damages exclusion was *in pari materia* with language in the policy defining an "occurrence" under the policy as an "accident.").

Many factors underlie the commercial reality that insurance policies often contain specific exclusions for conduct also excluded under a more general provision. Among these is the policy that ambiguous insurance contracts are to be construed against the insurer. Insurance companies have an interest in drafting policies with as few ambiguities as possible; therefore, it is likely that they would include "redundant" exclusions so as to reduce the possibility of doubt that the activity in question is excluded. *See* 9 G.J. Couch, *Couch on Insurance* § 127.28, at 127–60 (3d ed. 1997) (The purpose of a specific policy provision addressing sexual claims is to make the intentions of the parties "plainer.").

The absence of a "redundant" exclusion is not evidence that the behavior is covered, so long as the policy is not, in fact, ambiguous. Erie's policies in the instant case are not.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER, GLORIA PETTIT.

CHASANOW, J., concurs in the result only.