REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1248

September Term, 2015

ROBIN ALTSTATT SCARBOROUGH, ET AL.

v.

LESLIE B. ALTSTATT

Krauser, C.J.,
Meredith,
Berger,

JJ.

Opinion by Berger, J.

Filed: June 30, 2016

This case involves an appeal of an order of the Circuit Court for Montgomery County granting a motion to dismiss filed by appellee Leslie Altstatt ("Altstatt"). Robin Altstatt Scarborough, Alice L. Altstatt, and Carol E. Altstatt, appellants (collectively, "the Appellants"),[1] filed the complaint giving rise to the present appeal, raising various claims relating to injuries allegedly suffered due to childhood sexual abuse perpetrated by their father, Altstatt. Altstatt filed a motion to dismiss, arguing that the Appellants' claims were barred by the applicable statute of limitations. The circuit court agreed with Altstatt and dismissed the Appellants' complaint with prejudice.

On appeal, the Appellants present a single question for our review, which we have rephrased as follows:

> Whether the circuit court erred by ruling that the Appellants'
> complaint was barred by the statute of limitations.

Altstatt has moved to dismiss this appeal, arguing that the Appellants failed to file a timely notice of appeal. For the reasons explained herein, we shall deny Altstatt's motion to dismiss this appeal and hold that the circuit court did not err by ruling that Appellants' claims were barred by the statute of limitations.

## FACTS AND PROCEEDINGS

On December 4, 2014, the Appellants filed a complaint in the Circuit Court for Montgomery County alleging one count each of intentional infliction of emotional distress,

---

[1] When necessary to identify the Appellants individually, we refer to them using their first names for purposes of clarity and out of no disrespect.

assault and battery, and negligence as a result of sexual abuse by Altstatt while the Appellants were minor children. The alleged abuse occurred between 1964 and 1984.

On January 20, 2015, Altstatt filed a motion to dismiss the complaint, arguing that the Appellants' claims were barred by the statute of limitations. The Appellants opposed the motion to dismiss. The Appellants argued that they suffered from dissociative amnesia which, they alleged, should toll the statute of limitations until the time they began to remember the abuse in early 2014. The circuit court held a hearing on the motion to dismiss on April 22, 2015. At the conclusion of the hearing, the circuit court granted Altstatt's motion to dismiss because the claims were barred by the statute of limitations. The court reduced its judgment to a written order which was docketed on April 24, 2015.

On May 4, 2015, the Appellants filed a motion to alter or amend the order granting Altstatt's motion to dismiss. Altstatt filed an opposition on May 21, 2015. On June 9, 2015, the circuit court issued the order that forms the basis for Altstatt's motion to dismiss the extant appeal. The June 9, 2015 order provides:

> UPON CONSIDERATION of **Plaintiffs' Motion to Alter or Amend This Court's Order Granting Defendant's Motion to Dismiss Complaint**, it is this 9th Day of June 2015, by the Circuit Court of Maryland for Montgomery County, it is hereby
>
> ORDERED: That **Defendant's Motion to Dismiss Complaint is DENIED**.

(Emphasis added.)

The June 9 order was docketed on June 12, 2015. The docket entry provided:

> ORDER OF COURT (SALANT, J.) THAT PLAINTIFFS'
> MOTION TO ALTER OR AMEND THIS COURT'S ORDER
> GRANTING DEFENDANT'S MOTION TO DISMISS
> COMPLAINT IS DENIED, ENTERED. (COPIES MAILED)

On July 16, 2015, the circuit court issued a subsequent order titled "AMENDED

ORDER."[2] The order provided:

> Upon consideration of Plaintiffs' Motion to Alter or
> Amend, filed May 4, 2015 (docket entry #28), and Defendant's
> Opposition thereto, filed May 21, 2015 (docket entry #29), and
> pursuant to Maryland Rule 2-535(d), it is . . .
>
> **ORDERED** that Plaintiffs' Motion to Alter or Amend
> (docket entry #28) shall be, and hereby is, DENIED.

On August 6, 2015, Appellants filed a notice of appeal. On August 17, 2015, Altstatt

filed a motion to strike the Appellants' notice of appeal, which was denied by the circuit

court on September 16, 2015.

On November 2, 2015, Altstatt filed a motion to dismiss the appeal in this Court,

arguing that the Appellants' notice of appeal was untimely. The Appellants filed an

opposition on November 16, 2015. On November 30, 2015, this Court denied Altstatt's

motion to dismiss the appeal with leave to raise the issues in the briefs. In his brief, Altstatt

---

[2] This order appears to have been entered *sua sponte*. Other than a certificate regarding discovery docketed July 13, 2015, there is no indication in the record of any communication between the parties and the court between the court's June 12 order and the court's July 16 order.

3

subsequently moved to dismiss the Appellants' appeal as untimely. We, therefore, address the motion to dismiss the appeal herein.

## DISCUSSION

### I. Motion to Dismiss Appeal

Altstatt asserts that the Appellants' appeal must be dismissed as untimely. Altstatt argues that the Appellants' notice of appeal was due within thirty days of the circuit court's June 12, 2015 order. Because the Appellants' notice of appeal was not filed until August 6, 2015, Altstatt asserts that the notice of appeal was untimely filed. As we shall explain, we are unpersuaded.

Altstatt maintains that the trial court's June 12 order "contained a clerical error." As set forth *supra*, the June 12 order provided that the order was being entered "UPON CONSIDERATION of [the Appellants'] Motion to Alter or Amend." The order, however, did not expressly issue a ruling on the motion to alter or amend. Rather, the order provided that Altstatt's "Motion to Dismiss Complaint is DENIED." Altstatt argues that the order "should have read 'Plaintiff's Motion to Alter or Amend is DENIED'" and that the reference to the motion to dismiss rather than to the motion to alter or amend was an obvious mistake. Altstatt asserts that the circuit court clerk "correctly understood the [o]rder to mean that the [Appellants'] Motion to Alter or Amend was denied and entered the denial on the docket."

The Appellants respond that the June 12 order did not actually rule upon the Motion to Alter or Amend. The Appellants further assert that the instant appeal "was timely made

4

from the only order to which the Plaintiffs/Appellants could appeal -- the July 16 Order." The Appellants further argue that there is no factual support or evidence to support Altstatt's position that the June 12 order contained a "clerical error."

Maryland Rule 8-202 provides that, with exceptions not relevant here, a "notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken."[3] Pursuant to Rule 8-201, with exceptions not relevant here, "the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8-202." The 30-day filing requirement is "jurisdictional, and if the appeal is not timely noted, we must dismiss the appeal." *Carter v. State*, 193 Md. App. 193, 206 (2010).

Whether a final judgment has been entered "turns on whether the court indicated clearly that it had fully adjudicated the issue submitted and had reached a final decision on the matter at that time. In other words, the trial court's ruling must be an unqualified, final disposition of the matter in controversy." *Davis v. Davis*, 335 Md. 699, 710-11 (1994). We have explained:

> In order for that moment of final judgment to arrive, the judge's order must 1) be intended as an unqualified and final disposition of the matter in controversy, 2) adjudicate all claims entirely unless certified pursuant to Md. Rule 2-602(b), and 3) the clerk must make a proper record of the judgment.

---

[3] Indeed, the 30-day requirement for filing an appeal is tolled if a timely motion is filed pursuant to Maryland Rule 2-532, 2-533 or 2-534. *See* Md. Rule 8-202(c).

*Jenkins v. Jenkins*, 112 Md. App. 390, 402 (1996) (footnote omitted), *superceded by rule as stated in Bussell v. Bussell*, 194 Md. App. 137, 152-54 (2010) (relating to savings provision for a prematurely filed appeal).

In the instant case, the circuit court did not render an "unqualified, final disposition" with respect to the Appellants' motion to alter or amend until July 16, 2015. Indeed, the circuit court's issuance of an "amended order" strongly suggests that the circuit court itself recognized that the June 12 order had failed to rule on the Appellants' motion to alter or amend. Furthermore, as we explained in *Jenkins*, in order for a judgment to be final, "the clerk must make a proper record of the judgment." *Id.* In this case, the clerk of the circuit court did not enter a proper record of the June 12 order. The circuit court's June 12 order provided that Altstatt's motion to dismiss complaint was denied, but the corresponding docket entry provided that the Appellants' motion to alter or amend was denied. Because the June 12 order failed to render a judgment on the motion to alter or amend, and because the clerk failed to enter a proper record of the June 12 order, the June 12 order was not a final judgment from which an appeal could be taken. Rather, the July 16 order, which issued an unqualified, final disposition on the motion to alter or amend, constituted a final judgment, and it is from this judgment that Appellants noted a timely appeal. Accordingly, we hereby deny Altstatt's motion to dismiss Appellants' appeal.

6

## II.     Statute of Limitations

We next turn our attention to whether the circuit court erred by determining that the Appellants' claims against Altstatt were barred by the applicable statute of limitations. The facts which Appellants' allege as the basis of their claims all occurred when the Appellants were minors. Pursuant to the applicable three-year statute of limitations in effect at the relevant time, the Appellants were required to bring their claims within three years of reaching majority. The general civil statute of limitations applicable at the time Appellants reached the age of majority provided:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

Md. Code (1974, 1995 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article.[4] The Appellants reached the age of majority in 1972, 1976, and 1984, respectively.[5] Pursuant to the general civil statute of limitations, the Appellants were required to pursue their claims by the applicable dates in 1975, 1979, and 1987, respectively.

---

[4] As we shall explain *infra*, the General Assembly modified the statute of limitations for claims of child sexual abuse in 2003 and extended the time to file a complaint to seven years after achieving the age of majority. This was long after the Appellants' reached the age of majority. The statute currently in force provides that "[a]n action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 7 years of the date that the victim attains the age of majority." Md. Code (2006, 2013 Repl. Vol.), § 5-117 of the Courts and Judicial Proceedings Article ("CJP").

[5] Alice reached the age of majority on December 7, 1972, Carol reached the age of majority on July 28, 1976, and Robin reached the age of majority on June 14, 1984.

7

The Appellants assert that they have dissociative amnesia which, they allege, was caused by childhood sexual abuse perpetrated by their father. The Appellants define dissociative amnesia as a condition that "involves a reversible memory impairment in which memories of personal experience cannot be retrieved in a verbal form (or, if temporarily retrieved, cannot be wholly retained in consciousness)." The Appellants assert that they were each unable to recall "the details of the abuse" by Altstatt until January 2014, when Robin was hospitalized in an inpatient trauma disorders unit for a ten-day period. According to the Appellants, during Robin's hospitalization, Robin "realized for the first time the wide and deep effects of the sexual abuse" by Altstatt. Robin's sisters assert that Robin's hospitalization rekindled their own memories of the abuse. Carol reported that when Robin was hospitalized, "the whole mess was revived in frightening dimension" and the "incident brought back the horror I endured as a child." Alice reported that "[i]t was only upon the recent hospitalization of my sister, Robin, for depression and suicidal ideation that I started to comprehend what had occurred."

On December 4, 2014, within a year of Robin's hospitalization, the Appellants filed the complaint giving rise to the present appeal.[6] The Appellants assert that the application of Maryland's discovery rule, which the Appellants assert should toll the statute of limitations due to the Appellants' dissociative amnesia, renders their complaint timely filed.

---

[6] In February 2014, the Appellants reported the alleged abuse to the police. Following an investigation, Altstatt was indicted on criminal charges. The criminal matter against Altstatt is pending in the Circuit Court for Montgomery County.

8

Historically, under Maryland law, causes of action "'accrued on the date of the wrong." *Doe v. Maskell*, 342 Md. 684, 689 (1996) (citing *Hahn v. Claybrook*, 130 Md. 179, 182 (1917)). Under the traditional rule, claims that were not discovered until after the expiration of the limitations period were automatically barred. *Id.* The historical rule "did not distinguish between a blamelessly ignorant plaintiff and one who had acted negligently and slumbered on his rights." *Id.* at 690 (internal quotations and citations omitted). It was in response to this harsh application of the historical rule that the Court of Appeals developed the "discovery rule," under which "a cause of action 'accrues' when [a] plaintiff knew or should have known that actionable harm has been done to him." *Id.*

Although originally applied in the context of cases involving medical malpractice, the discovery rule was ultimately made applicable to all civil matters. *Poffenberger v. Risser*, 290 Md. 631, 637 (1981). The Court of Appeals has explained:

> We held [in *Poffenburger*] that in order to "activate the running of limitations [it must be proven that the plaintiff had] actual knowledge-that is express cognition, or awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'"

*Maskell*, *supra*, 342 Md. at 690 (quoting *Poffenberger*, *supra*, 290 Md. at 637 (quoting *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402 (1969))).

9

**A.     The Decision of the Court of Appeals in *Doe v. Maskell***

Nearly twenty years ago, the Court of Appeals addressed the application of the discovery rule to a case involving repressed memories of childhood sexual abuse in *Maskell*, *supra*, 342 Md. 684.  The Court identified the issue before it as "whether the 'discovery rule' applicable to the time-bar of the statute of limitations on civil actions at law . . . applies to cases of allegedly 'repressed' and 'recovered' memories." *Id.* at 686.[7]  The Court found that "the critical question to the determination of the applicability of the discovery rule to lost memory cases is whether there is a difference between forgetting and repression." *Id.* at 691.  The Court explained this distinction as follows:

> It is crystal clear that in a suit in which a plaintiff "forgot" and later "remembered" the existence of a cause of action beyond the 3-year limitations period, that suit would be time-barred. Dismissal of such a case reflects our judgment that the potential plaintiff had "slumbered on his rights," should have known of his cause of action, and was blameworthy. To permit a forgetful plaintiff to maintain an action would vitiate the statute of limitations and deny repose for all defendants.

*Id.* at 692.

In order to determine whether there was a difference between forgetting and repression, the Court examined "expert testimony provided at the summary judgment hearing" and "numerous scientific journals submitted by the parties." *Id.*  The Court

---

[7] As we shall explain *infra*, the phenomenon previously referred to as "repressed" and "recovered" memories is now referred to as "dissociative amnesia" by the relevant scientific community.

observed that "[e]ven defining the term [of repression] is not easy." *Id.* The Court provided

the following definition of repression set forth by David S. Holmes in *The Evidence for*

*Repression: An Examination of Sixty Years of Research*, *in* REPRESSION AND

DISASSOCIATION: IMPLICATIONS FOR PERSONALITY, THEORY, PSYCHOPATHOLOGY AND

HEALTH 85, 85-86 (J. Singer, ed. 1990):

> It is my belief that in its general use the concept of repression
> has three elements: (1) repression is the selective forgetting of
> materials that cause the individual pain; (2) repression is not
> under voluntary control; and (3) repressed material is not lost
> but instead stored in the unconscious and can be returned to
> consciousness if the anxiety that is associated with the memory
> is removed. The assertion that repression is not under voluntary
> control differentiates repression from suppression and denial,
> with which it is sometimes confused . . . .

*Maskell*, *supra*, 342 Md. at 693.

The Court commented that the petitioners had "provided [the Court] with several

studies purporting to validate the diagnosis of repression." *Id.* (citing various articles). The

Court noted, however, that the respondents "ha[d] also offered significant scientific

information tending to discredit the concept of repression and its application in this setting,"

noting that the "arguments against repression take several forms." *Id.* The Court observed

that "[f]irst, the adversaries of repression stress that there is no empirical, scientific evidence

to support the claims that repression exists." *Id.* The Court further noted that "critics of

repression theory point out that the scientific, and specifically, the psychological community

has not embraced repression theory, and that, in fact, serious disagreement exists." *Id.* at 694.

11

Finally, the Court emphasized that concern existed relating to the accuracy and reliability of recovered memories, explaining:

> Finally, critics of repression theory argue that the "refreshing" or "recovery" of "repressed" memories is more complicated than repression proponents would have us believe. This argument takes two forms: (1) that memories refreshed with the assistance of a mental health professional are subject to manipulations reflecting the biases of the treating professional; and (2) that a repressed memory cannot be retrieved whole and intact from the cold storage of repression.

*Id.* at 695.

After having reviewed the arguments on both sides of the issue, the Court was "unconvinced that repression exists as a phenomenon separate and apart from the normal process of forgetting." *Id.* As such, because the Court concluded that repression and the normal process of forgetting were "indistinguishable scientifically," the Court reasoned "that they should be treated the same legally." *Id.* Accordingly, the Court held that "the mental process of repression of memories of past sexual abuse does not activate the discovery rule." *Id.* Notably, the Court observed that "[i]f the General Assembly should wish to rewrite the law, that is its prerogative and responsibility." *Id.*

## B.    The Appellants' Challenge to the Underlying Rationale of *Maskell*

The Appellants do not dispute that *Maskell* involved similar facts and a similar statute of limitations issue to that presented in this appeal. Nor do the Appellants dispute that the Court of Appeals in *Maskell* held that "repression of memories is an insufficient trigger to compel the application of our discovery rule." 342 Md. at 686. The Appellants urge,

however, that "the scientific community and empirical evaluation regarding the mental condition of memory alteration in sexual abuse victims has changed significantly" in the years since *Maskell* was decided. The Appellants assert that, due to the "significant change and growth of empirical evidence" in this area, the rationale behind the Court's holding in *Maskell* is no longer applicable. The Appellants point to changes in four areas: (1) the Diagnostic and Statistical Manual of Mental Disorders ("DSM"),[8] (2) various peer-reviewed scientific studies and evaluations published in the past nineteen years, (3) expert testimony, and (4) decisions from courts of other jurisdictions.

With respect to the DSM, the Appellants emphasize that two new editions of the DSM have been published since the Court of Appeals issued its decision in *Maskell*, both of which provided updated definitions for "sexual-abuse-related memory alterations."[9] The Fourth Edition of the DSM was published in 2006 and the Fifth Edition of the DSM was published in 2012. Both of the two most recent editions of the DSM recognize a mental disorder called "dissociative amnesia," which is defined as "an inability to recall important autobiographical information that 1) should be successfully stored in memory and 2) ordinarily would be readily remembered." DSM-5, § 300.12 at 298-302 (2012). The Appellants point out that the DSM provides that dissociative amnesia is "inconsistent with

[8] The DSM "is the standard classification of mental disorders used by mental health professionals in the United States." Diagnostic and Statistical Manual of Mental Disorders (DSM), AMERICAN PSYCHIATRIC ASSOCIATION, https://www.psychiatry.org/psychiatrists/practice/dsm (last visited May 10, 2016).

[9] "Sexual-abuse-related memory alterations" is a term used by Appellants.

ordinary forgetting." Altstatt concedes that the current edition of the DSM recognizes the condition known as dissociative amnesia.

The Appellants urge this Court to rely upon the DSM with respect to the "empirical nature of the mental-health condition at issue before this court" and conclude that the holding of the Court of Appeals in *Maskell* is no longer valid. The Appellants emphasize that the DSM has been relied upon by both this Court and the Court of Appeals in a wide variety of contexts. Indeed, we have cited to the DSM in a myriad of cases. *See*, *e.g.*, *Black & Decker Corp. v. Humbert*, 189 Md. App. 171, 190 (2009) (citing the DSM-IV for the definition of somatization disorder); *Pettit v. Erie Ins. Exch.*, 117 Md. App. 212, 228 (1997) *aff'd* 349 Md. 777 (1998) (taking judicial notice of the definition of pedophile provided in the DSM-IV). The Court of Appeals has similarly relied upon the DSM. *See*, *e.g.*, *Menefee v. State*, 417 Md. 740, 745 (2011) (citing the DSM for the definition of posttraumatic stress disorder); *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 264 (2003) (citing the DSM for the definition of hypoxyphilia). The Appellants further point to multiple references to the DSM in the Code of Maryland Regulations ("COMAR") as additional support of the importance of the DSM, commenting that COMAR "references the DSM thirty-six (36) times as an authoritative source for mental disorders." Because the DSM now recognizes the mental health condition of dissociative amnesia, and because Maryland appellate courts have repeatedly relied upon the DSM as an authoritative source, the

14

Appellants urge us to conclude that the reasoning behind the *Maskell* decision is no longer compelling.

The Appellants additionally point this Court's attention to various scientific research on dissociative amnesia over the past nineteen years. The Appellants assert that the "literally hundreds" of articles on dissociative amnesia demonstrate that "dissociative amnesia (1) is a distinct mental condition, (2) is suffered as a direct result of sexual abuse, and (3) is not merely forgetting." The Appellants note that empirical evidence exists now which did not exist at the time *Maskell* was decided. The Appellants further urge that the current empirical evidence compels a holding that the discovery rule should be applied to claims of childhood sexual abuse involving dissociative amnesia.

Altstatt responds that there is nothing in the record to support the Appellants' assertions with respect to the validity of dissociative amnesia or the changes in the scientific community's view of that disorder. Altstatt asserts that it was only after the circuit court dismissed the Appellants' complaint that the Appellants submitted journal articles and DSM excerpts for the circuit court's consideration, as attachments to the motion to alter or amend. Altstatt emphasizes that the circuit court never reopened the judgment to admit any additional evidence.

The Appellants assert that, had this case not been dismissed, they would have presented expert testimony which would have demonstrated that the Appellants suffered from dissociative amnesia. Prior to the circuit court dismissing the complaint with prejudice,

the Appellants designated Dr. Joyanna Silberg, Ph.D., as an expert witness. The Appellants contend that Dr. Silberg is "unequivocally certain that a sexual abuse victim's inability to recall abuse due to dissociative amnesia is empirically different and separate from the normal process of forgetting," and that Dr. Silberg would have testified accordingly. The Appellants further assert that Dr. Silberg would have testified that the Appellants' inability to recall the abuse by Altstatt prior to January 2014 was due to dissociative amnesia and was not due to the normal mental process of forgetting. Altstatt responds that Dr. Silberg never prepared an expert report and that there is nothing in the record indicating the nature of Dr. Silberg's testimony if she were permitted to testify.

The Appellants also direct this Court's attention to various rulings addressing related issues from courts of other jurisdictions. The Appellants assert that there is a "clear trend" in the United States of permitting victims of childhood sexual abuse to bring their claims "within the statute of limitations once their memories are finally accessible." The Appellants cite to cases from Arizona, *see Doe v. Roe*, 955 P.2d 951, 960 (Ariz.1998) ("Application of the discovery rule to tort sexual abuse cases is . . . the majority rule in this country."), Massachusetts, *see Clark v. Edison*, 881 F. Supp. 2d 192, 201-02 (D. Mass. 2012) (permitting expert testimony on dissociative amnesia after applying the analysis set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)), South Carolina, *see Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 331-32 (2000) (expressing the view that "equating a repressed memory to merely 'forgetting' ignores advances in the

understanding of the human mind") *aff'd*, 341 S.C. 320 (2000), *overruled on other grounds by State v. Cherry*, 361 S.C. 588 (2004), Florida, *see Hearndon v. Graham*, 767 So. 2d 1179, 1186 (Fla. 2000) (holding that "the delayed discovery doctrine applies to the accrual of the instant cause of action based on a claim of childhood sexual abuse accompanied by traumatic amnesia"), Oregon, *see State v. Gherasim*, 985 P.2d 1267 (Or. 1999) (holding that the trial court erred by excluding expert testimony about dissociative amnesia), and Indiana, *see Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738 (Ind. 1999) (holding that the equitable doctrine of fraudulent concealment would toll the statute of limitations when a victim could demonstrate that a defendant's conduct caused the repression of memories of abuse).

The Appellants advocate that "[i]t is time for Maryland courts to recognize what many other courts (and scientists) across the United States have already come to realize since 1996, that memory alteration through dissociative amnesia in child sexual abuse cases is different from the normal process of forgetting, and when applicable, dissociative amnesia should activate the discovery rule and toll the statute of limitations for sexual abuse civil claims." We note, however, that Maryland courts have not always adopted the reasoning of the majority of other jurisdictions, even when the consensus among other courts is nearly overwhelming. *See Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 694 (2013) (declining to adopt a comparative negligence standard and instead maintaining the strict contributory negligence standard, a position taken by only four other jurisdictions).

Furthermore, as discussed *supra*, the *Maskell* Court indicated that any modification of the statute of limitations for claims relating to childhood sexual abuse was a decision for the General Assembly, not for the courts. *Maskell*, 342 Md. at 695 ("If the General Assembly should wish to rewrite the law, that is its prerogative and responsibility.").

Indeed, following the Court of Appeals' decision in *Maskell*, the General Assembly addressed the issue of the statute of limitations for claims relating to child sexual abuse. In 2002, the General Assembly extended the applicable statute of limitations for civil claims arising out of childhood sexual abuse to seven years after the victim reaches the age of majority. 2003 Md. Laws Ch. 360 (S.B. 68), codified at CJP § 5-117. Prior to enacting Senate Bill 68, the legislature considered a different version of the bill which would have extended the time for filing claims even further. The original bill -- which was not enacted by the legislature -- would have extended the time for filing an action for damages arising out of childhood sexual abuse to "within 12 years of the later of . . . the victim's 21st birthday; or the date on which the victim knew or reasonably should have known that the alleged abuse was actionable." S.B. 68, 2003 Leg., 417th Sess. (1st Reading, Jan. 20, 2003).

Moreover, this issue has also been considered more recently by the Maryland General Assembly. Bills were introduced in both chambers of the General Assembly during the 2016 Session which would have extended the time for filing civil claims arising out of childhood sexual abuse to twenty years after the victim reached the age of majority. S.B. 69, 2016 Leg., 436th Session; H.B. 1215, 2016 Leg., 436th Session. Neither bill proceeded to a floor

18

vote. The Court of Appeals has emphasized that when the General Assembly has "repeated[ly] fail[ed] to pass [particular] legislation," such a failure "is very strong evidence that the legislative policy in Maryland is to retain the" current law. *Coleman*, *supra*, 432 Md. at 694.

In this appeal, the Appellants maintain that the underpinnings of the *Maskell* decision are less persuasive today than twenty years ago, when the case was decided by the Court of Appeals.[10] Nevertheless, we must be cognizant of our role as an intermediate appellate court. Regardless of whether one agrees or disagrees with the Court of Appeals' decision in *Maskell*, it is the law of the State unless and until the Court of Appeals revisits this issue or the legislature acts to change the law. Accordingly, pursuant to the Court of Appeals' decision in *Maskell*, the discovery rule does not apply to toll the statute of limitations in cases involving memory impairment relating to alleged childhood sexual abuse. 342 Md. at 695.[11]

---

[10] We note, however, that this Court was not presented with any evidence which would refute the Appellants' assertions with respect to the validity of dissociative amnesia. Rather than challenge the Appellants' various arguments with respect to the empirical basis for dissociative amnesia, Altstatt argued that *Maskell* mandates the result in this case. It may be that there are compelling criticisms of dissociative amnesia and counter-arguments to those asserted by the Appellants. The determination of whether dissociative amnesia is, in fact, a generally accepted phenomenon supported by empirical evidence is not before this Court in this appeal.

[11] At oral argument, counsel for the Appellants argued that *Maskell* is controlling law, but that dissociative amnesia, which Appellants allege tolls the statute of limitations in this case, is distinguishable from repression, which the Court of Appeals held did not trigger the discovery rule to toll the statute of limitations in *Maskell*. We read *Maskell* as holding that
(continued...)

We have explained that even when a party presents "criticisms which logic, semantics, policy and history permit to be directed against" a ruling adopted by the Court of Appeals, the ruling of the Court of Appeals remains the law of this State until and "[u]nless those decisions are either explained away or overruled by the Court of Appeals itself." *Loyola Fed. Sav. & Loan Ass'n v. Trenchcraft, Inc.*, 17 Md. App. 646, 659 (1973). Accordingly, this Court is compelled to "follow what a majority of its members discern to be the precept to be drawn" from the decisions of the Court of Appeals. *Id. See also Halliday v. Sturm, Ruger & Co.*, 138 Md. App. 136, 169 (2001), *aff'd*, 368 Md. 186 (2002) ("We do not believe that the Court of Appeals could have spoken with any greater clarity than it did in its decision in *Kelley* [*v. R.G. Industries, Inc.*, 304 Md. 124 (1985)]. Until and unless the Court of Appeals revisits the issue, we are bound by *stare decisis*.").

It may very well be that the Court of Appeals ultimately determines that it would be appropriate to reconsider its holding in *Maskell*. Nevertheless, that determination is solely within the province of the Court of Appeals. We do not intend to minimize the seriousness of the allegations in the present case. Cases involving claims of childhood sexual abuse are among the most disturbing encountered by this Court, and we recognize that victims of

---

[11] (...continued)
the discovery rule does not apply to toll the statute of limitations in cases involving memory impairment relating to alleged childhood sexual abuse, regardless of whether the memory impairment is characterized as "repressed" or as "dissociative amnesia." Furthermore, we emphasize that, given that this case is before us on an appeal from an order granting a motion to dismiss, there is nothing in the record which would enable us to assess whether dissociative amnesia is indeed a separate phenomenon from repression.

20

childhood sexual abuse often suffer lifelong consequences.  Nonetheless, *Maskell* clearly

holds that the discovery rule does not toll the statute of limitations for claims arising out of

childhood sexual abuse.  As such, the circuit court did not err by dismissing the Appellants'

complaint as untimely filed.  Accordingly, we affirm.

> **MOTION TO DISMISS APPEAL DENIED. JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**